# IN THE COURT OF APPEALS OF IOWA

---

No. 25-0639
Filed July 22, 2026

---

**State of Iowa,**
Plaintiff–Appellee,

v.

**Rhett Bryan Wickett,**
Defendant–Appellant.

---

Appeal from the Iowa District Court for Warren County,
The Honorable Kevin Parker, Judge.

---

**AFFIRMED**

---

Christopher A. Kragnes of Kragnes & Associates, P.C., West Des Moines,
and Nathan Olson (until withdrawal) of Branstad & Olson Law Office, Des
Moines, attorneys for appellant.

Brenna Bird, Attorney General, and David Banta, Assistant Attorney
General, attorneys for appellee.

---

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

This appeal arises from the events at a gathering on a summer evening in July 2024. Rhett Wickett set out to confront Chad Daniels—once his childhood friend, now the husband of Wickett's former wife—about the end of Wickett's marriage. Before the evening ended, Wickett had traded words and blows with several of those present, including two of his own children. A jury found Wickett guilty of two counts of harassment and two counts of assault. He appeals, challenging the sufficiency of the evidence and the district court's decision to impose incarceration rather than probation. We affirm.

## BACKGROUND FACTS AND PROCEEDINGS

Wickett married Melissa Lowe in 1991, and the couple had three children together—Dillion, Josie, and Dalton. After more than twenty years of marriage, Wickett and Melissa divorced in 2014, and Wickett thereafter had little contact with Melissa or the children. Melissa later married Daniels, who had been a childhood friend of Wickett's.

One evening in July 2024, Wickett went looking for Daniels, wishing to speak with him about the end of Wickett's marriage and his belief that Melissa had been unfaithful. Finding no one at Daniels's home, Wickett went to the home of Daniels's parents. Daniels's mother told him Daniels was not there and called her son, who was hosting a gathering at a nearby pond. Among those present were Dillion and Josie, Daniels's brother Sam, and Daniels's friend Benjamin Camp.

The events that followed were described at trial by several witnesses, and their accounts diverge in material respects. What follows reflects the testimony as the parties have summarized it.

After learning Wickett was at their mother's home, Sam and Camp went to check on her and encountered Wickett on the porch. By the State's account, Wickett declined to shake Camp's hand, refused Sam's request to leave, and—when the encounter continued—came close to Sam and threatened to harm him, making a statement about burying him in his mother's flower garden. Wickett, by contrast, denied threatening to harm or bury Sam, testifying instead that he told Sam he was fortunate to not be lying injured in the garden.

Wickett then returned toward Daniels's home, where Daniels intercepted him, and the two spoke about Melissa. As to what happened next, the witnesses again differed. Sam, Daniels, and Camp described Wickett as the aggressor: Sam and Daniels testified that Wickett turned mid-conversation and lunged at or swung at Sam and missed, after which Sam struck him; that Wickett rose and re-engaged; and that Sam again prevailed, leaving Wickett on the ground. Camp testified he did not see Wickett throw a punch, but described Wickett moving aggressively toward Sam, characterized Sam's blows as defensive, and recounted hearing Wickett threaten Sam. Wickett testified that Sam knocked him out suddenly and without provocation, and he denied swinging at anyone. Wickett acknowledged on cross-examination that he got in Sam's face and that Daniels asked him to leave.

A separate altercation followed when Dillion arrived. The State's witnesses testified that Dillion told Wickett to leave, the two began fighting, and Wickett placed his son in a chokehold until Josie intervened to free Dillion as he began losing consciousness. Dillion then struck Wickett, and a friend of Dillion eventually forced Wickett to the ground. Wickett's account described a general struggle with Dillion of which he had limited recollection.

The parties agree the record reflects that Dillion's knees were scraped during the fight, and a photograph of those injuries was admitted as an exhibit.

The State further presented testimony that, as Josie moved to record the scene with her phone, Wickett stated he would return with a gun and kill those present and he continued to challenge others to fight. A video recording taken by Josie was admitted as an exhibit.

Law enforcement arrived thereafter. A deputy found the parties separated and directed Wickett to wait by the patrol vehicle. Wickett, whose face was bloodied, stated he was the victim of an assault and an ambulance transported him to the hospital. Wickett testified to significant injuries, including stitches near his eyes, broken ribs, and scrapes to his knees.

The State charged Wickett by trial information on August 9, 2024. A jury trial was held on February 27 and 28, 2025. On February 28, the jury returned verdicts finding Wickett guilty of harassment in the second degree against Sam, a serious misdemeanor (count I); harassment in the first degree against Josie, an aggravated misdemeanor (count II); assault against Sam, a simple misdemeanor (count III); and assault causing bodily injury against Dillion, a serious misdemeanor (count IV).

A presentence investigation report was prepared and filed. At the sentencing hearing on April 15, Wickett requested a suspended sentence and a term of probation with conditions of supervision, including substance-use and mental-health evaluation and treatment. The district court sentenced Wickett to one year of incarceration on count I, two years on count II, thirty days on count III, and one year on count IV, with the terms to run concurrently, for a total indeterminate term not to exceed two years. The court declined to suspend the sentence. In the judgment and sentence, the

court stated that it had considered the protection of the public, the gravity of the offenses, Wickett's criminal history, and his rehabilitative needs. The court also entered a no-contact order.

Wickett now appeals. He contends that the verdicts are not supported by sufficient evidence and that the district court abused its discretion in imposing a term of incarceration rather than a probationary sentence.

## STANDARD OF REVIEW

We review sufficiency-of-the-evidence claims for correction of errors at law. *See State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted).

When, as here, the sentence imposed is within statutory limits, we review challenges to the sentence for abuse of discretion. *See State v. Rasmussen*, 7 N.W.3d 357, 363 (Iowa 2024). In reaching the sentencing decision, the district court is given significant latitude, and we vacate a sentence only when the sentence is based "on grounds that were clearly untenable or unreasonable." *Id.*

## DISCUSSION

### I.  Sufficiency of the Evidence

We are bound by the jury's verdict if it is supported by substantial evidence, which "is evidence sufficient to convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt." *See State v. Brown*, 32 N.W.3d 774, 778 (Iowa 2026) (citation omitted). In assessing the sufficiency of the evidence, we view it in the light most favorable to the State, including

drawing all legitimate inferences and presumptions that may be fairly and reasonably deduced from it. *Id.*

We begin with the conviction for second-degree harassment of Sam, which required the State to prove that Wickett, purposefully and without legitimate purpose, had personal contact with Sam intending to threaten, intimidate, or alarm him, and that the harassment involved a threat to commit bodily injury. *See* Iowa Code § 708.7(1)(b), (3) (2024). The jury heard that, at the home of Daniels's parents, Wickett refused Sam's repeated requests to leave, came close to him, and told him that he would put him in his mother's flower garden, adding that Sam did not want to mess with him—testimony from which the jury could find a threat of bodily injury directed at Sam. Sam testified that the encounter left him frightened, and that in the days afterward he relocated his family and installed security cameras. Camp, who stood nearby, corroborated the substance of the exchange and testified that, had the statements been directed at him, he would have felt threatened. The jury was free to credit this account over Wickett's competing testimony that he had said only that Sam was fortunate not to be lying injured in the garden. A reasonable juror could find each element satisfied.

The first-degree harassment conviction concerning Josie required the additional element of a threat to commit a forcible felony. *See id.* § 708.7(1)(b), (2)(a)(1). Josie testified that, after she intervened to free her brother and stood beside Wickett, he rose and told her that the next time he came he would bring a gun and kill them all. She testified that the statement frightened her, she believed Wickett capable of carrying it out, and she too installed security cameras afterward. Daniels, standing nearby, testified that he heard Wickett say he would get a gun and kill all of them. Wickett offered no real denial of the statement, testifying instead that he had little memory

6

of the events. A rational juror could find Wickett made a threat to commit a forcible felony to Josie and intended to threaten, intimidate, or alarm her. That the words may also have reached others present does not defeat the finding that they were directed at her; she was standing beside Wickett when he spoke, and the jury was entitled to so conclude.

The assault convictions fare no better for Wickett. As to the assault on Sam, Wickett does not have the right to directly appeal his conviction of a simple misdemeanor. *See Tyrrell v. Iowa Dist. Ct.*, 413 N.W.2d 674, 675 (Iowa 1987) ("Under section 814.6, a defendant convicted of a simple misdemeanor in district court has no appeal as a matter of right.").

As to the assault on Dillion, Dillion testified that he and Wickett came together and that Wickett placed him in a chokehold, holding him until Josie pried Wickett's arm away as Dillion began to lose consciousness. Daniels and Josie each described the chokehold, and Josie testified that she intervened because she feared her brother would pass out. Dillion testified that his knees were scraped in the struggle and that they hurt to the point that he could barely walk. A photograph of the injuries was admitted. Wickett himself acknowledged on cross-examination that he and Dillion went toward one another and wrestled, and he did not dispute that a chokehold occurred, testifying only that he did not remember it. From this evidence, a rational juror could find an assault and resulting bodily injury. *See* Iowa Code §§ 708.1(2), .2(2).

That Wickett was injured during the evening does not negate the elements; the jury could find that he was the aggressor and that any force used against him was defensive. The district court correctly submitted these questions to the jury, and substantial evidence supports each verdict.

## II.    Sentencing

Wickett next contends that the district court abused its discretion in imposing a term of incarceration rather than the suspended sentence and probation he requested. Because the sentences fall within the statutory limits, they are "cloaked with a strong presumption in [their] favor," and we will overturn them only "for an abuse of discretion or the consideration of inappropriate matters." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). In choosing a sentence, the court weighs the nature of the offense, the attending circumstances, and the age, character, propensity, and prospects for reform of the offender, with the twin goals of rehabilitating the offender and protecting the community. *Id.* at 725; *see* Iowa Code § 901.5. "Judicial discretion imparts the power to act within legal parameters according to the dictates of a judge's own conscience, uncontrolled by the judgment of others." *Formaro*, 638 N.W.2d at 725.

We find no abuse of discretion. The court stated that it had reviewed the presentence investigation report and the file, that it had presided over the trial, and that it imposed the sentence to protect the public and to rehabilitate Wickett. In its written judgment, the court further identified the protection of the public, the gravity of the offenses, Wickett's criminal history, and his rehabilitative needs. These are settled and proper sentencing considerations, and the record discloses no reliance on any improper factor.

Wickett's real complaint is that the court did not give controlling weight to the factors favoring probation—his expression of remorse, his asserted need for substance-use and mental-health treatment, and his request for community-based supervision. But the weight to be assigned to competing sentencing factors lies within the sound discretion of the sentencing court. *See State v. Boltz*, 542 N.W.2d 9, 11 (Iowa Ct. App. 1995).

Nor does a court abuse its discretion simply by declining to impose the sentence a defendant requests. The court considered the permissible factors, explained its reasons, and imposed a sentence the legislature authorized. We discern no abuse of discretion.

**AFFIRMED.**